May it please the Court, my name is Robert Pelsiger, appearing for the Pyramid Lake Paiute Tribe of Indians. I'd like to reserve five minutes for rebuttal if I can. It's sort of a career case, isn't it? It's a career, yes, it is, Your Honor, many cases, fortunately. And we thought we wouldn't be here today with this one. First, I'd like to address the mootness issues that the Court was a subject of the Court's February 14th order, and then to address two jurisdictional issues, the lack of jurisdiction under the Alpine Decree and the Sovereign Immunity Defense. With regard to the mootness question, the Court's first question in its February 14th order was whether Bass's participation in the AB 380 program has been fully affected. The answer to that question is clearly no. Bass is seeking to have his challenged and now finally determined to have been abandoned water rights matched under the AB 380 program to enable his proposed transfer or change of those water rights to be approved by the State Engineer. That has not happened. Pure and simple, it hasn't happened. The water rights have not been matched and the proposed transfer has not been approved. Therefore, this case is not moot. The Court's February 14th order also directed the Tribe to identify with particularity its claimed injury. The Tribe's injury here takes two forms, water and money. As to money, the Tribe is entitled under the AB 380 program to be compensated for the Bass water rights that have now been finally determined to have been abandoned. The Tribe has not yet been paid even though those water rights have finally been determined to have been abandoned. And the District Court issued two orders which are confusing. The first order of March 10th, 2006 expressly confirmed the State Engineer's determination that the Bass water rights have been abandoned. The second order of March 29th, a couple of weeks later, created confusion by directing the Tribe to withdraw its protest from the Bass transfer application. The Tribe should be and expects to be paid, to be compensated by the Carson Water Sub-Conservancy District, the administrator of the AB 380 program, if the March 29th, if the second order, the March 30th, 2006, to be compensated by this Court. And I would like to note in that regard that it's important for this Court to act fairly quickly on that matter, because the AB 380 program is in the process of winding down and it will expire by June 30th, 2006. And so, therefore, 2007, 2007, I'm sorry. And so, therefore, for the Tribe to be compensated, it would be very helpful and useful for this Court to have, to have, to have, to have to issue its decision prior to June 30th, 2007, as quickly as possible. As to the, as to the Tribe's injury related to water, if the March 29th order is reversed, the confusion created by that order would be eliminated and the Bass water rights would be abandoned once and for all with no ifs, ands, buts, or maybes. The water rights being, that are being held by the Carson Water Sub-Conservancy District for matching would then be abandoned. It would be abandoned by the Sub-Conservancy District or used by the Sub-Conservancy District to match other water rights to enable those water rights to be resolved under the program. Either way, the Tribe would benefit by reducing the total amount of water rights that are on the Truckee River in two ways, not one way, but two ways. Or put another way, the Tribe would be, is injured, the Tribe is injured by the March 29th order because it results in more Truckee River water allowed to be diverted away from Pyramid Lake than would be the case if that order were reversed by this Court. And I'd like to point out some in our letter brief, our supplemental letter brief responding to the Court's order in the next to the last paragraph on the last page, the word upheld was a mistake. It should have been reversed if the March 29th order were reversed by this Court, not if it were upheld by this Court. So that's our position on the mootness question. With regard to the jurisdiction under the Alpine Decree, the District Court did not have jurisdiction under the Alpine Decree to order the Tribe to withdraw its protest of a, of the bass transfer application. Under Administrative Provision 7 of the Alpine Decree, the District Court reviews decisions of the State Engineers, of the State Engineer on applications to change or to transfer decreed water rights. That's not, however, what the District Court did in its March 29th order directing the Tribe to withdraw the, its protest. The Bass motion asked the District Court, not the State Engineer, to enforce Bass's alleged rights under the AB 380 program. There was no State Engineer decision on that motion to be reviewed by the District Court. The District Court acted in the first instance. Therefore there was clearly no jurisdiction under Administrative Provision 7 which vests the District Court with jurisdiction only to review decisions of the State Engineer on transfer applications. No other, nor is there any other provision of the Alpine Decree that even arguably or remotely extends the reach of the Alpine Court's continuing jurisdiction to encompass the AB 380 program, the AB 380 agreement, or the dispute between the Tribe and Mr. Bass. On that point, Bass's only real argument is that the Alpine Court has jurisdiction over all matters, all matters that touch or involve or affect in any way any decreed water right. But that clearly is not the case. If it were, it would mean that the Alpine Court would have jurisdiction, for example, to adjudicate disputes arising from contracts to sell or a decreed water right or disputes arising from transactions in which a decreed water right is pledged as collateral for a loan or for a mortgage, for example, which happens frequently, or for disputes involving a decreed water right that is at issue in a contested divorce or a bankruptcy or in a probate proceedings. None of that has ever happened. Nobody has ever argued that the Federal District Court, sitting in the Alpine case, would have jurisdiction over those kinds of disputes, but that is a necessary conclusion of the Mr. Bass's argument for jurisdiction. Finally, with regard to Tribal sovereign immunity, by protesting the Bass transfer application, the Tribe waived its immunity under the holding of this Court in the United States against and that included, of course, whether the Bass water rights were forfeited or abandoned. But the Tribe did not, did not waive its immunity with respect to all other matters and issues that touch, concern, involve or affect the Bass water rights, matters such as the administration of the AB 380 program or the enforcement of the AB 380 agreement. Well, who can? Are you saying no court has authority? Well, I'm not saying that. You're saying the Tribe hasn't waived sovereign immunity. The Tribe has not waived sovereign immunity. I presume you're not suggesting the Nevada State court has authority over the Tribe. That's correct. No, I'm not suggesting. So are you suggesting whatever contractual agreement is inferred from the arrangement is unenforceable as far as the Tribe is concerned? Well, of course, the contract, Your Honor, is not with Mr. Bass. The contract is with, between the Tribe, the AB 380 agreement is between the Tribe and the Carson Water Conservancy District. And there's a continuing relationship. The Bass water rights is one of literally hundreds of water rights that are affected by that agreement. And so the structure, there are no provisions in the AB 380 agreement of any kind for dispute resolution, none whatsoever. It doesn't say mediation, it doesn't say arbitration, it doesn't say any court has jurisdiction, a court of competent jurisdiction. There's no language like that whatsoever, nor is there, of course, any waiver of the Tribe's sovereign immunity. And I think what was contemplated under the agreement is that these issues would be worked out, which indeed they have. And I'm proud to say that notwithstanding the hundreds of transactions that have occurred under the AB 380 program, the Bass transaction is the only one that has led to conflict and litigation. And there are various ways within the AB 380 program we interact all the time for these issues to be resolved, and they have been resolved. But your answer to Judge Clifton is, in your view, no court has jurisdiction. That's correct. And this Court has said repeatedly that the, as a matter of policy, the importance of Tribal sovereign immunity overcomes the lack of remedy in individual cases. There are cases where that occurs. Let me ask you a practical question, if you might. Would the assistance of the surrogate mediator be of help to you in this, or are you past that point? I think we're past that point, Your Honor. I know you've mediated a lot of cases and negotiated very complicated issues, and I just take it you're worried. But it seems as though this is something that could be worked out. It would seem that way, I think. If I were sitting in your position, I would agree with that. Okay. So, as I've indicated, Tribal immunity has been repeatedly and consistently recognized and given effect by this Court, and by the Supreme Court, and those decisions are cited and discussed in our brief. I'd like to mention one briefly, the one that I think is directly on point and controlling in this case, and that's this Court's 1989 decision in McClendon v. United States at 885 F. Sec. 627. McClendon specifically limited and clarified United States against Oregon, which was the main authority on which Bass relies. McClendon specifically rejected and explicitly rejected the argument that a tribe's initiation of a lawsuit necessarily waives its immunity with respect to issues subsequently arising from that lawsuit. By bringing the action this Court held, the tribe had only consented to the Court's adjudication of the merits of that particular controversy, the controversy involved in the lawsuit in that case it brought, but not to other disputes that followed in the wake of that initial lawsuit. Sovereign immunity was held to bar, in fact, a subsequent suit involving a related matter which happened to involve enforcement of another agreement that resulted from a settlement of the first lawsuit. So McClendon, we believe, is dispositive here and requires reversal of the district court's March 29, 2006, order. Thank you. Roberts. You've got a little over two and a half minutes for rebuttal if you want to use it. Counsel? Good morning, Your Honors. My name is Craig Pridgen, and I am the attorney representing Mr. Bass. Michael Wohls is present and represents the Nevada State Engineer. Mr. Wohls has agreed that I can use the time unless the Court gets allotted to our side, unless the Court has specific questions they would like to address to him, in which case you're certainly invited to do that. Sure. I think, based on what Mr. Pelsker said, I want to address the jurisdictional issue first, because I think under these cases, the long history of the Alpine and Ordich decisions, and by the way, this falls within the Alpine class, if you will, of decisions, because we're dealing with water on the Carson River, as opposed to the Ordich line of decisions, which are related, certainly, same principles apply, but that is on the Truckee division. Mr. Bass's farm happens to be on the Carson division, so the Alpine decisions. But his reliance on the McClendon decision is improperly placed for two very sustained reasons, which were specifically addressed by Judge Jones. Number one, this is an in-rem – three reasons. Number one, this is an in-rem action. Number two, it's adjudicating all the water rights, in-stream water rights, on the Carson River within the Newlands Project. And number three, the Court has specifically retained jurisdiction over all the parties to that adjudication. So do you agree with Mr. Pelsiger that this means that any mortgage claim over or lien claim over water rights, any contract dispute over water rights must be resolved in the Federal District Court? I don't agree with what you just said, Your Honor. Well, what are the limits of in-rem jurisdiction, then, in your view? The limits of the in-rem jurisdiction is any issue arising in the Alpine litigation with respect to which this Court has maintained and the District Court has maintained jurisdiction for over 25 years. Exclusive jurisdiction. Why wouldn't an adjudication of a water right be part of that under your in-rem theory? It is. An adjudication of a water right is definitely included in that. If someone forecloses, if there's – I'm just using his hypotheticals. Why wouldn't a – the divorce decree terms that affect a water right, why wouldn't at least terms all be subject to Federal court jurisdiction? I'm not saying it's good or bad, but isn't that the consequence of in-rem jurisdiction? No. Why not? Because it's limited to the parties in the adjudication of which the tribe has been a party for 25 years. And the settlement agreement was not entered into between – But in-rem is over the object. That's correct. Not over the parties. That's personal. That's personal. But the in-rem jurisdiction in the Alpine cases is jurisdiction limited to determining the ownership rights, title and interest, and into all of the water within that stream, which is the Carson River. Right. That's my question. And, Mr. Pelsinger, if you have a dispute over title and water rights, isn't that part of Federal court jurisdiction? If you have a dispute over the title and the water rights, I would respectfully suggest that it would be a State court action if it's in the divorce decree. I don't think that's a proper analogy. Well, that's maybe. But if there is a dispute between, in this case, the tribe and Mr. Bass, over who has an ownership interest, that's exactly what this case is about. Well, let's say there's a third party that claims your water rights, not a party to this litigation, files a suit in State court. Is that subject to Federal court adjudication or not? Well, I think that they could file it there because the jurisdiction is here. So what they would have to do would be to file an action in the district court claiming that they have acquired Mr. Pridgen's water rights by adverse possession and beneficial use. Right. And then the district court would have to decide whether or not, consistent with Nevada law and the Alpine decisions, that was — that could be accomplished. So we're agreed it's not — your in-rim theory is not limited to the parties? My in-rim theory may not be limited to the parties, but that, I don't believe, is the issue before the court. The issue before the court is whether or not the tribe, who is a party — a real party in interest, and became a real party in interest in this litigation 25 years ago or more. Well, I'm — what I'm saying is, if we say in the course of making that decision that the court has — district court has in-rim jurisdiction, that has other consequences, and I want to probe that. That's my only reason for questioning it. What you said was in-rim jurisdiction applies to parties, and that's — that's sort of antithetical to in-rim jurisdiction. It's over the race. So if we say — if we adopt your theory of in-rim jurisdiction, then for good or ill, I think all of these things are going to happen in federal district court. That may be a good thing. It may be a bad thing. But I think that's the consequence. You seem to dispute that, and I just don't understand it. No. I'm not disputing it. I think what I'm trying to do is put it in context of the matter that's before this court. And that is, the tribe is claiming that this court lacks jurisdiction over it, and it relies on the McClendon decision for that proposition. All right. Let's — let's leave aside in-rim jurisdiction. How do you distinguish McClendon on the — on the simple theory of waiver? How is this different? The McClendon decision — In other words, assuming we don't have — there's no in-rim jurisdiction, how do you distinguish McClendon? Because in McClendon, the court did not retain jurisdiction. The court did not retain jurisdiction to enforce its order with respect to the facts of that case. Okay. So — In this case, there are two reasons, Your Honor, please. And secondly, that case did not involve an in-rim jurisdiction issue. Okay. So if you eliminate the — All right. If you second — May I interrupt just for a second? Okay. Which argument is based on the document and in-rim jurisdiction? If you leave those aside, are you conceding that the tribe has not waived sovereign immunity  Am I conceding that they have not waived — Yes. I'm conceding — yes, because they've appeared in the — I'm not conceding that. Excuse me. Okay. How do you distinguish McClendon? That's the question. That's the narrow question I'd like to address. Okay. As I said, besides the two ways that I stated? Yes. Okay. Because the tribe participated in this case in the actual hearing of the Bass adjudication of their water rights before the Nevada State engineer. In fact, it was the protestant. That — that was appealed — How is that different from initiating an action and then saying, all right, that's enough for sovereign immunity purposes. We can't — we're going to assert it at this point in McClendon. If I could go beyond one step. Sure. So I think that's the first reason. The second reason is that the tribe was the author and is a party to the settlement agreement, which arises out of the Alpine decree, to which it is a party, and with respect to which the court maintains ongoing jurisdiction over the parties, including any settlements entered into by the parties. The settlement agreement was entered into between the parties to this litigation involving the United States and the tribe and local communities and the Truckee Carson Irrigation District, which administers the project. Yes. And it was specifically designed as a settlement to which, I suggest, the tribe is bound. And that, unlike the cases it relies on, where the court held that they could not enforce a settlement agreement, that is not the case here for the very reasons that I've stated earlier, and that is that the tribe is a party in the litigation, which is ongoing, and this Court has exclusive jurisdiction. The district court has exclusive jurisdiction over that adjudication, and that was decided in the Alpine decree. Yes, but that's getting back to your MRM theory, which may be the one we end up with. I don't know. Oh, go ahead. I didn't mean to divert you. Oh, that's all right. And perhaps I didn't fully understand your question. I apologize. I probably used a goodly part of my time. You have about five minutes. The jurisdiction is conferred under Administrative Order No. 5 and the Alpine decree. And as part of that, the court has, as I indicated, the obligation and the authority to review settlements. The State engineer does not have that authority. The State engineer was appointed by the district court to act as, if you will, the hearer of or the initial finder of fact with respect to the application of Nevada law to water rights, which are sought to be transferred within the project, and specifically with respect to forfeiture and abandonment. The jurisdiction to adopt or reject the decisions of the Nevada State engineer was reserved by the court. As a matter of fact, as I stated in my brief, Judge McKibben at the time specifically said to the State engineer and instructed the State engineer to make a recommendation to the court, and he said on the record that he reserved the right to review and make a final decision. Now, what has occurred is that judge, that Mr. Bass, after a final recommendation by the State engineer, which the trial argues was a final decision, and I suggest to you under any analysis it was not, it was a recommendation, and the final decision came from Judge McKibben, or Judge Jones in this case, the ruling that he relies on, the March 10th ruling that is relied on by Mr. Peltziger, is not dispositive. What the judge did in that at the very end is he said that this ruling, which was the body of that decision, of that order, the March 10th order, he did not address the Bass matter, and in fact addressed it subsequently as a result of his March 29th order. And it was pursuant to that order that the judge determined that there had not been a final adjudication, and that Mr. Bass was entitled to participate in the AB 380 program. The judge had the ultimate jurisdiction, and it rests with the district court. With respect to Mr. Peltziger's argument concerning what he's entitled to receive as a result of this, I think I pointed out in my letter brief, first of all, even if you assume that there's a final adjudication saying that Mr. Bass' water rights have been abandoned, he is absolutely entitled to participate in the settlement program by its expressed terms. The only difference, the only difference is that he's also entitled to be paid, not by Mr. Bass, but by conservancy. And his, Mr. Peltziger, the tribe's claim for payment, for reimbursement, assuming that there's been a final adjudication before Mr. Bass elected to participate in this program, his remedy is against the agency charged with administering the program. His claim is against the conservancy agency who administers the program. He is trying, I believe, by distorting the factual realities of the case to claim that Mr. Bass is not entitled to participate. But the exact language which Mr. Peltziger signed as part of the AB 380 program says that even if you have, your water rights have been determined forfeited or abandoned, you're entitled to participate in the program. Mr. Bass went out long before there was a final adjudication, but even if you say the State engineer's ruling was a final adjudication, he could still go out and participate. And he did. And he paid out of his own pocket for the money, with his money, and the water has been retired. The O&M charges, which is operation and maintenance, have been paid to TCID. The water is no longer being diverted for irrigation purposes. For the last two irrigation seasons, Mr. Peltziger's client has received the benefit of that water that's been retired on behalf of Mr. Bass. The only thing remaining to be done is the administrative certification of the location of Mr. Bass's water, which he was allowed to keep under the terms of the settlement agreement, on his farm. And that is in the process of being handled through the Nevada State engineer. I respectfully suggest to you that the tribe's remedy is not before this Court. And its suggestion that the result would be to the contrary is not provided for anywhere in the settlement legislation. Specifically, and I know my time is up, specifically, what Mr. Peltziger on behalf of his client is asking this Court to do is to rewrite the settlement agreement so that Mr. Peltziger would get the match water that my client paid for, for the benefit of the lake, would get the water that he claims, because it's a final decision, that my client lost on his own and that he gets paid. That is not how the program works. Okay. Thank you very much. Thank you for your argument. Rebuttal? Several brief points. First of all, the Alpine case was not an in rem adjudication. It was a quiet title action. And I refer the Court to Alpine 1, the decision of this Court, 697F2 at 853 specifically describes Alpine as a quiet title action, not as an in rem action. Second, with regard to the parties, it's an odd argument, because the parties to the AB 380 agreement are the tribe, which is a party, kind of, sort of. The tribe was not an original party to Alpine, but the tribe intervened and has been treated as a party after the final judgment. But the other party to the AB 380 contract is the Carson Water Subconservancy District, which is not a party to Alpine and is not a party, was not a party, was not sued, even though this was an action to enforce the AB 380 agreement, which Mr. Bass was not a party, the subconservancy was. Subconservancy is not a party to the Alpine case. So the efforts to uphold the Alpine Court's jurisdiction over this agreement with the subconservancy was not a party and was not an in rem action, I think, must fail. Second, with regard to the March 10th order to which Mr. Pridgin referred, which is reproduced in the tribe's supplemental, I'm sorry, to the tribe's excerpts of record, the first page of that decision, that order, states that after hearing oral argument and reviewing the pleadings on file, the Court upholds and affirms the Nevada State Engineer's ruling on Remand 5464. No exceptions. And then at the very end of that opinion, therefore, it is ordered that the Nevada State Engineer's ruling on Remand 5464 and its subparts is affirmed. So that leaves no doubt that the ruling, that whatever question there may have been about the State Engineer's decision, whether it was a recommendation or final or whatever, by the time, by March 10th, 2007, that state, 2006, excuse me, that State Engineer's ruling had been affirmed and the water rights were finally determined to have been abandoned. And that decision has not been overturned by Mr. Bass. So with the water rights having been abandoned, again, what Mr. Bass is trying to do is to have his transfer of those water rights approved by the State Engineer. This is not a ministerial action. There's no decision of the State Engineer approving that transfer. And the tribe has not withdrawn its protest. And now that the water rights have finally been determined to have been abandoned, how can water rights found to have been abandoned by a final order of the district court be transferred? The answer is they can't. Those water rights are now abandoned. I plainly have the sequence confused. So let me ask you to pin down precisely the order that you're referring to that you say was a final order with regard to the abandonment issue. When was that entered? March 10th, 2006. And it's reproduced in the excerpts of record beginning on page 53. Now in the March 30th, 2006 order, there's a reference to the objection to the State Engineer's recommendations be deemed moot. And that's one of the things that has me confused. Do you have two contradictory orders by the district court? On the one hand, affirming, expressly affirming the abandonment of those water rights and then saying in the March 30th or March 29th order, I think we refer to it as, that the water rights have not finally been determined to have been abandoned. And that's at page 100 of the excerpts where Judge Jones stated further, the Bass application has not been subjected to a final decision that would preclude him from participating in the program when the previous March 10th order clearly found that the water rights were abandoned. Water rights that are found to have been abandoned cannot be transferred. That this Court has said that repeatedly in the Alpine line of cases. Does that answer your question, Judge Liffman? There is confusion. It confirms my confusion. Yes, it affirms your confusion. I, I, I, you have reason to be confused. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted for decision, and the Court will stand in recess for the day.
judges: Hawkins, Thomas, Clifton